Receipt number 9998-5123183

# UNITED STATES COURT OF FEDERAL CLAIMS

## (BID PROTEST)

|  |  |
|---|---|
| ESKRIDGE & ASSOCIATES | |
| Plaintiff, | Civil Action No.:   **18-2001 C** |
| v. | |
| THE UNITED STATES OF AMERICA | |
| Defendant. | |

---

## BID PROTEST

---

Mark H. Wilson
Whitcomb, Selinsky, McAuliffe, PC
2000 S. Colorado Blvd.,
Tower One, Suite 9500
Denver, CO 80204
(303) 534-1958 Telephone
(303) 534-1949 Fax
Eskridge & Associates

December 28, 2018

**COMPLAINT**

Plaintiff, ESKRIDGE & ASSOCIATES, ("Eskridge"), by and through its undersigned counsel, brings this complaint against the United States Department of the Army ("Army"), the Defendant, for failure to adhere to the proper procurement practices with respect to Solicitation Number(s): W91YZT-16-R-0039 and W91YTZ-18-R-0006.  Both solicitations involve a personal services contract for Certified Registered Nurse Anesthetists (CNRAs) located at the Womack Army Medical Center (and outlying clinics) in Fort Bragg, NC.  The Army wrongly failed to award Eskridge as the sole source in the original incarnation (Solicitation No. W91YZT-16-R-0039), even though it was the lowest price bidder, applying an unstated and inadequate price realism analysis to the option years of the contract. After alleging to take corrective action, the Army issued Solicitation No. W91YTZ-18-R-0006 where it noted price realism as an evaluating factor. However, the Army failed to apply price realism analysis to each option year regardless of informing Eskridge of the percentage necessary (based on its original IGCE) to meet option year compliance. Eskridge has filed four bid protests with the GAO since 2016 in its attempt to obtain justice and force the Army to fairly and consistently apply the evaluating factors necessary to rightly award the contract. The Court may set aside an agency's contract award if (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.

In support its Complaint, Eskridge states and alleges the following:

**PARTIES**

1.      Eskridge is a limited liability SDVOSB that is incorporated in Williamson County, Texas (Exhibit (Ex.) 1).  Eskridge submitted the lowest price for Solicitation W91YZT-16-R-0039. (Ex. 2). However, the Army took corrective action and ultimately, and wrongly, cancelled the

solicitation. The Army then issued Solicitation No. W91YTZ-18-R-0006. (Ex. 6). After multiple

protests challenging the Army's evaluation factors, Eskridge was an unsuccessful bidder for the

contract.

2.     The Defendant is the United of America through the Department of the Army ("Defendant"

or "Army").

## JURISDICTION

3.     This action is brought under, and jurisdiction is vested in this court through, the Tucker

Act, 28 U.S.C.A. § 1491(b)(l), amended by the Administrative Disputes Resolution Act of 1996,

Public Law Number 104-320, § 12(a), 110 Stat. 3870, 3874-75 (codified at 28 U.S.C.A. §

1491(b)).

## STANDING

4.     To have standing to bring a bid protest, a plaintiff must be an "interested party." This means

that the plaintiff is "(1) an actual or prospective bidder and (2) possesses the requisite direct

economic interest." Assessment & Training Sols. Consulting Corp. v. United States, 92 Fed. Cl.

722, 728 (2010) (citing Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir.

2009)).

5.     There is no magic number of days in filing a bid protest. Bid protests should be addressed

individually, given the factual circumstances presented, recognizing, of course, the urgent need for

resolution of bid protest cases. Palantir Techs. Inc. v. United States, 128 Fed. Cl. 21, 34 (2016).

6.     Eskridge, therefore, is an interested party and has standing to challenge the agency's

evaluation of the proposals. Eskridge is an actual bidder and has the requisite direct economic

interest in the prospects of and award. Had the Army properly evaluated the proposals, Eskridge

would have received the contract award. Eskridge was the original low bidder on Solicitation

W91YZT-16-R-0039 and has maintained its chain of protest through multiple GAO matters prior

to seeking just before this court.

## NOTIFICATION

7.      Pursuant to Appendix C to the Court of Federal Claims Rules, on November 16, 2018,

Eskridge notified the Department of Justice ("DOJ"), the Army, and the Court of Federal Claims

that it intended to file a bid protest.

## FACTUAL BACKGROUND

8.      Eskridge was incorporated on April 24, 2002. (Ex. 1).

9.      Eskridge is a verified SDVOSB in the business of placing medical professionals on a direct

basis nationwide for numerous agencies, including the Army.

10.     On May 12, 2016, the Army published Solicitation W91YZT-16-R-0039 as a SDVOSB

set aside, seeking quotes for 34,560 hours per year of Certified Registered Nurse Anesthetists

("CRNAs"). (Ex. 2).

11.     On March 14, 2017, the Army informed Eskridge that its bid was an unsuccessful for

Solicitation W91YZT-16-R-0039. (Ex.3). In the notice, the Army indicated in pertinent part that

Eskridge's bid was unacceptable in its "Overall Technical Rating," "Recruitment Plan," and

"Compensation Retention Plan." Id.

12.     Eskridge timely requested a formal debriefing, pursuant to FAR part 15 and in

accordance with the Solicitation's debriefing requirements, from the Army. The Army responded

with a debriefing which it sent on March 22, 2017. (Ex. 4).

13.     In the debriefing for Solicitation W91YZT-16-R-0039, the Army, via its contracting

officer, answered each of Eskridge's three questions regarding the denial by repeating verbatim

the same response.  Id.  The Army related that Eskridge's price proposal created risk of

nonperformance because "the proposed rates do not keep up with pay increases typically seen for healthcare providers.  Therefore, there is a high risk of retaining providers in the latter years of performance." Id. Based on this debriefing, Eskridge concluded that the Army erred significantly in the evaluation process that led to the award denial.

14.     Eskridge filed a post-award bid protest (B-414521) to the GAO on March 27, 2017. (Ex. 5). A primary argument in that bid protest stated that the Army performed a price realism analysis, under the auspice of a best value evaluation criteria, without announcing its intent to do so in the request for quotes ("RFP").

15.     On April 28, 2017, the Army advised the GAO that it intended to take corrective action in part to "Revise the solicitation requirements, reissue the solicitation and make a new source selection decision" (Ex. 14).

16.     Because of the corrective action, the GAO dismissed bid protest (B-414521) on May 2, 2017 (Ex. 7).

17.     On May 1, 2017, Eskridge filed a protest with the GAO challenging the Army's corrective action. The protest argued that the Army's proffered corrective action lacked a consistent rationale for the cancellation of the solicitation and was a pretext for merely continuing the existing contract with the incumbent. (Ex. 12).

18.     The next day, May 2, 2017, the GAO dismissed Eskridge's protest based on the Army's corrective action and the cancellation of the award of the contract to Performance Anesthesia, the incumbent. (Ex. 7). However, the GAO allowed Eskridge's substantive objection of the Army's corrective action to move forward as a separate protest. Id. Still, the GAO, in extending the protective order associated with the bid protest to the protest of the agency's corrective action, encouraged the parties to negotiate a resolution to the matter since Eskridge intended to submit

an offer to the new solicitation. (Ex. 11). After a series of discussions, the parties ostensibly came to an agreement on how the Army would amend the language in the new solicitation to indicate that proposals would be evaluated for compensation realism and price reasonableness. (Ex. 15). Based on this agreement, Eskridge informed the GAO on May 19, 2017, that it resolved its basic grievances with the Army's corrective action and would withdraw its protest. (Ex. 11).

19.     The Army clearly agreed to amend the language in the new solicitation to specifically indicate that proposals would be evaluated for compensation realism and price reasonableness for both the base year and each applicable option year. (Ex. 15).

20.     The Army then posted Solicitation W91YTZ-18-R-0006 on the Federal Business Opportunities (FBO) website on January 04, 2018, with a closing date of January 24, 2018. The solicitation was 100% set-aside for SDVOSB, although the Army initially listed it as a Total-Small-Business set aside. Two amendments were ultimately issued. Amendment #1 provided answers to asked equestions; extended the closing date to February 02 at 2:00 PM EST, and updated the DOL Wage Determination, and corrected the errant set-aside. (Ex. 16). Amendment #2 deleted the overtime hours in accordance with the Federal Acquisition Regulation Provision 52.222.45. (Ex. 17).

21.     In accordance with the Solicitation's Addendum 52.212-2, the Government stated that it would list proposals from lowest to highest price. (Ex. 6). The Army would evaluate the Technical Acceptability of the five (5) lowest prices proposals first. Id. If one of those proposals was rated Technically Acceptable, the Army will not evaluate the next five proposals. Id.

22.     On February 2, 2018 Eskridge submitted its proposal to the CO wholly relying on the agreement it made with the Army to amend the language of the new solicitation to specifically state that price realism would be used to evaluate the base year and all option years.

23.     However, because Eskgride could not adequately locate the specific language agreed upon within the solicitation it also immediately filed a pre-award protest with the GAO, (B-415986). (Ex. 18). Further, had Eskrigde known the Army would not abide by its agreement, the protest of the corrective action would have moved forward. Thus, a primary argument in the protest was that the Army acted in bad faith by not inserting the language to alert potential offerors that a price realism analysis would extend to both the base year and option years.

24.     On February 12, 2018, the Army filed a motion with the GAO seeking to dismiss the protest. The Army argued that Eskridge was simply confused, and that it did in fact comply with the agreement to insert language into the new solicitation noting price realism as an evaulting factor. (Ex. 19). The Army pointed to the solicitation's incorporation of FAR 52.222.46 and claimed that the clause satisfied the agreement and alerted offerors that compensation realism was an evaluating factor. <u>Id.</u> Again, the Army assured Esridge that it would abide by its agreement and that the price realism analysis would extended to all option years. Based on Eskridge knowing the exact percentages it was off from the IGCE based on the first debriefing, the company believed the Army was acting in good faith and that it had a fighting chance to receive the contract award.

25.     Thus, on February 14, 2018, Eskridge withdrew its pre-award protest, again, under the good faith belief that the Army would evaulate offers by extending a price realism analysis beyong the base year to each applicable option year. (Ex. 20).

26.     The Army then issued an award in which it was clear based on the precentages provided to Eskridge on how far prices were orginialy off of the IGCE that price realism was not extended to the option years in the evaluation.

27.     On March 19, 2018, Eskridge filed a post-award protest with the GAO (B-415986.2).

(Ex. 21).

28.     Eskridge protested on three grounds:

> a.  One, the solicitation required "fully loaded" pricing for CRNA wages. Eskridge
>     believes that the Army [sic] winked at this requirement and that the five lowest
>     offerors were not responsive pursuant to the evaluation criteria.
>
> b.  Two, the agency canceled the prior solicitation for essentially the same
>     requirement stating that Eskridge's prices were too low. Eskridge modified its
>     pricing based on the prior solicitation debriefing and was this time found to high.
>
> c.  Three, the source selection Authority failed to evaluate proposals pursuant to the
>     solicitation, and/or the solicitation is patently ambiguous, and the requirement
>     should be resolicited.

29.     On April 18, 2018, after Eskridge overcame a Request for Dismal the Agency opted to

issue yet another corrective action. (Ex. 9).  This time the Agency elected to merely reevaluate

proposals to essentially evaluate whether the source selection authority (SSA) did anything

wrong and whether the awardee complied with a technical sub-section.

30.     After four months of apparent reevaluation the Agency issued a Notice of Award

basically stamping its imprimatur on the previous evaluation. (Ex. 10). Again, Eskridge received

a Technically Acceptable rating.  Again, however, the awardee underbid Eskridge by close to

two million dollars, an impossible price based on the Army's own IGCE, which it continues not

to release. In the subsequent debriefing, the Agency provided no reasoning as to how the current

awardee's price satisfied the contract's latter year compensation requirements. (Ex. 22).  Further,

the Agency chose not to provide a comparative analysis of the awardee's winning price on the

subject solicitation and Eskridge's similar, but unacceptable, price offered on the original solicitation.

31.     On August 6, 2018, Eskridge was notified it was unsuccessful in this competition. (Ex. 23)

32.     On August 8, 2018, Eskridge requested a debriefing which was provided in writing on August 22, 2018. (Ex. 22). Again, the Army failed to abide by its orginal agreement and did not conduct a price realism analysis of the later option years, which allowed the LPTA bidder to submit an offer more than two millon below Eskridge. This is the same reason Eskridge lost the orginal award, submitting a proposal alledgely too far below the IGCE to allow for position sustaininablity in the later years of the contract.

33.     On August 27, 2018, Eskridge filed its most recent protest and alleged the following:

a.     First, Eskridge alleges that the Army's evaluation of offers was unreasonable, capricious, and contrary to law. To prove its assertion, Eskridge provided a sufficient factual basis taken directly from the Solicitation and the subsequent debriefing.

b.     Second, Eskridge alleged that the Army's evaluation of the bids was ambiguous and contrary to the terms of the solicitation. To support this allegation, Eskridge again proffered facts directly from the Solicitation and subsequent debriefing, along with a legal basis grounded in FAR 52.222-46, to show that the Army simply ignored its duty to evaluate price for realism.

34.     On November 7, 2018, the GAO dismissed Eskridge's protest for not qualifying as an interested party because it was fifth in line to receive the award. However, the GAO simply ignored the fact that if the Army correctly applied a price realism evaluation to each option year,

Eskridge would have likely been the LPTA bidder and received the award. Instead, Eskridge relied on the Army's agreement and the CO's debriefing, which detailed the percentages that the company fell below IGCE in the option years.

35. The GAO improperly dismissed Eskridge's protest. The Army has acted in an arbitrary and capricious manner. Eskridge brings this complaint within one-year of the GAO decision and therefore in accordance with 41 U.S.C.A. §7104.

## COUNT ONE

## DECLARATORY JUDGEMENT

36. The Plaintiff incorporates by reference paragraphs 1 through 35.

37. That the Army's actions were improper and unreasonable because of the four grounds alleged in this complaint. The Army's conduct was contrary to law, arbitrary, capricious, and an abuse of discretion.

## COUNT TWO

## IMPROPER EVALUATION

38. "It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation." Banknote Corp. of Am. v. United States, 56 Fed. Cl. 377, 386 (2003), aff'd, 365 F.3d 1345 (Fed. Cir. 2004); see also PGBA, LLC, 60 Fed. Cl. at 207. This requirement is firmly rooted in the Competition in Contracting Act (CICA), which indicates that an agency shall evaluate competitive proposals and assess their qualities based solely on the factors and subfactors specified in the solicitation. See 10 U.S.C.A. § 2305(a)(2)(A), 2305(a)(3)(A) (West); 48 C.F.R. § 15.305(a). "The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the RFQ." Halter Marine, Inc. v. United States, 56 Fed. Cl. 144, 2003 (2003).

39.     Further, the Competition in Contracting Act (CICA) 10 U.S.C.A. § 2304 (West) mandates "full and open competition" in government procurement. The Federal Acquisition Regulations (FAR) mirror this requirement and provides that contractors receive impartial, fair, and equitable treatment (FAR § l.602-2(b)).  Eskridge has not received impartial, fair, or equitable treatment in this Solicitation in that the Army did not evaluate the Proposals equally.

40.     Since Eskridge has demonstrated that the other offerors did not have realistic pricing and failed to submit responsive offerors, they were deficient on the Technical Qualifications required by the Solicitation.

41.     Requirements for award in an LPTA award are twofold. The proposal is first evaluated for the technical requirements of the solicitation. If a proposal is technically acceptable, its price is then compared to any other technically acceptable proposals and the contract is awarded to the technically acceptable proposal with the lowest price. 48 C.F.R. § 15.101-2. A prerequisite for this award was "meeting or exceeding the technical acceptability standards for non-cost factors." (Solicitation, Page 11 of 50, citation omitted). Since the other lower offerors proposals were technically deficient, they should have been found technically unacceptable and should not have been considered for award.

42.     As this court and the Government Accountability Office (GAO) have repeatedly held, an "agency's failure to follow the terms of its own Solicitation and selection of an offeror based upon different requirements than those imposed upon the only other offeror are quintessential examples of conduct which lacks a rational basis." Hunt Bldg. Co. v. United States, 61 Fed. Cl. 243, 273, modified, 63 Fed. Cl. 141 (2004). See also CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. 462, 490 (2013) ("It is well-established that a 'contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria.'"

(quoting Banknote Corp. of America, 56 Fed. Cl. at 383)); L-3 Commc'ns EOTech, Inc. v. United States, 83 Fed. Cl. 643, 653 (2008) ("Waiver of a mandatory requirement of the solicitation for the benefit of only one offeror invalidates a procurement decision." (*citing* Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367–68 (Fed. Cir. 1999), and Beta Analytics Int'l, Inc. v. United States, 44 Fed. Cl. 131, 138 (1999))); Sperry Marine, Inc.; Aydin Radar & E.W. Div., B-227106 (Sept. 14, 1987) (sustaining protest because the Navy relaxed two mandatory performance requirements for one offeror only). Such uneven treatment "goes against the standard of equality and fair-play that is a necessary underpinning of the federal government's procurement process and amounts to an abuse of the agency's discretion." PGBA, LLC, 60 Fed. Cl. at 207; *see also* 41 U.S.C.A. § 3301(a) (West)(requiring "full and open competition through the use of competitive procedures"); and TLT Const. Corp. v. United States, 50 Fed. Cl. 212, 216 (2001) ("A fundamental principle of government procurement is that [the agency must] treat all offerors equally and consistently apply the evaluation  factors listed in the solicitation."). Therefore, the Army violated the terms of the Solicitation in making a determination of this award based on improperly evaluating proposals, and Eskridge was prejudiced by the Army' s actions in that Eskridge would have received the award if the information material to the Solicitation criteria was evaluated according to the Solicitation's requirements.

### ESKRIDGE'S ENTITLEMENT TO INJUNCTIVE RELIEF

43.     Eskridge requests that this Court grant preliminary injunctive relief to stay the Army from re-solicitation of this contract and suspend further action and performance on the contract until this Protest is resolved.

44.     To establish entitlement to a preliminary injunction pursuant to FCL CT Rule 65(a), a plaintiff must demonstrate: (i) a likelihood of success on the merits; (ii) the harm to plaintiff

outweighs the harm to defendant; (iii) the public interest is served by enjoining defendant; and (iv) irreparable injury to plaintiff if defendant is not enjoined, including, but not limited to, the absence of an adequate remedy at law.

45.    To support its entitlement to a preliminary injunction, the Plaintiff reasserts the allegations contained in the above paragraphs.

46.    Eskridge properly seeks to enjoin the Army from awarding the contract to another lower priced offeror and instead award it to Eskridge. *See* Turner Const. Co. v. United States, 645 F.3d 1377, 1388 (Fed. Cir. 2011) (holding that "[i]njunctive relief is appropriate if it 'enjoin[s] the illegal action and return[s] the contract award process to the status quo ante.'") (quoting Parcel 49C Ltd. P'ship v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994)).

47.    This court must consider four factors prior to the issuance of a Temporary Restraining Order or a Preliminary Injunction. They are as follows:

a.    That the petitioner has a strong likelihood of prevailing on the merits;

b.    That the petitioner would be irreparably injured without such relief;

c.    That a stay or injunction would not substantially harm the government or other interested parties; and

d.    That the public interest will not be significantly harmed.

PGBA, LLC, 389 F.3d at 1228–29.

48.    As demonstrated, *supra*, Eskridge's proposal was technically acceptable, Eskridge was the only technically acceptable respondent to the Solicitation, and Eskridge would have been awarded the contract but for the Army's failure to rule out the technically unacceptable offerors. Eskridge has established a strong likelihood of prevailing on the merits.

49.    If another party is allowed to proceed as the awardee on this contract, Eskridge will be irreparably harmed. Eskridge will not be able to recover any lost profits and overhead from the

contract, which would have been realized had it been awarded and allowed to perform. Further, "courts have found consistently that the loss of an opportunity to compete for a contract on a level playing field sufficiently establishes irreparable harm." RhinoCorps Co. v. United States, 87 Fed. Cl. 673 (2009).

50.     The government will not be substantially harmed if the Army awards the contract to Eskridge rather than another party. On the contrary, the government will be better off.  The other offerors and the awardee failed to demonstrate in their proposals that their prices were reasonable or technically acceptable.

51.     The public interest is served when a government entity is held to follow a mandatory procedure that it previously disregarded. RhinoCorps Co., 87 Fed. Cl. at 680. The public interest will be served by requiring the VA to follow the regulations outlined herein.

## RELIEF SOUGHT

52.     As demonstrated above, the awardee is not technically qualified to perform in the Solicitation and its proposal was materially deficient.

53.     Since the awardee is not qualified to perform the contract and its proposal was deficient, it cannot be found technically acceptable.

54.     The Army's procurement decision lacked a rational basis and involved a violation of regulation or procedure. The Contracting Officer ignored the stated evaluation criteria and awarded to a contractor who was not qualified to perform the work required by the Solicitation, and was otherwise in violation of Federal Procurement Law. The Court may set aside an agency's contract award if (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.

55.     Injunctive relief is appropriate under the facts of this case and as outlined by *RhinoCorps*. The awardee is not technically qualified to receive the award pursuant to its proposal. Eskridge is qualified. No other party responded to the Solicitation. Eskridge should be awarded the contract.

56.     Bid and proposal costs are an appropriate remedy for an interested party objecting to a proposed contract award in connection with a procurement. 28 U.S.C.A. § 1491(b)(2).  An award of injunctive relief does not preclude monetary damages. AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 379, opinion clarified, 87 Fed. Cl. 654 (2009).

## CONCLUSION

WHEREFORE, Eskridge respectfully requests that this Court:

A.      Issue a declaratory judgment on its protest that the Army's actions making the procurement decision were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

B.      Issue a declaratory judgment on its protest that the Army's award of the contract to the awardee was in violation of the Solicitation and applicable procurement laws and regulations;

C.      Order the Army to award the contract to Eskridge;

D.      Order the Army to pay Eskridge damages in the amount of its bid preparation and proposal costs; and

E.      Any other monetary and injunctive relief the Court determines is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Eskridge prays that this Court award it declaratory and injunctive relief as well as monetary relief.  But for the Army's errors, Eskridge would have been the awardee for this contract.  Eskridge asks this Court to find that the Army's refusal to award to Eskridge was

arbitrary, capricious, and contrary to law and to sustain its protest on these grounds.  Eskridge also requests:

1. The Award to be extended to Eskridge and the errors corrected;

2.  A ruling by the Court on its protest;

3.  Injunctive relief that the Army refrain from awarding and or re-soliciting the procurement (see above);

4.  A declaration that the Army's repeated corrective actions were pretext, improper and unreasonable;

5. Such other relief as the Court determines necessary to promote compliance with statutory and regulatory requirements applicable to the procurement; and,

6. A recommendation that the Army pay Eskridge's costs of filing and pursuing this Protest (see below).

## REQUEST FOR PROTEST COSTS AND ATTORNEY FEES

Pursuant to 4 C.F.R §21.8(d), (e), Eskridge respectfully requests that this Court award Eskridge protest costs and attorney fees.  If the Court sustains this protest on its merits, the rules provide for these fees.  Alternatively, Eskridge argues that an award is appropriate absent such a decision because 1) The Agency improperly evaluated the lower offerors technical requirements, 2) engaged in disparate evaluations and acted unreasonable toward Eskridge, 3) issued a defective and ambiguous solicitation which did not comport with its corrective actions or include proper CRNA wages, 4)  has acted in bad faith; 5) Eskridge's protests on this contract are clearly meritorious; and 6) there has been undue delay because Eskridge has incurred costs other than those associated with its previous protest filing.  _LORS Medical Corp., B-270269.2_, Apr. 2, 1996, 96-1 CPD ¶ 171, at 3

## REQUEST FOR A PROTECTIVE ORDER

Pursuant to Paragraphs 16 and 17 of Appendix C of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff, the Eskridge & Associates, respectfully requests the Court to enter a protective order in this case (Motion filed separately).  The attached protective order is the same as this Court's model protective order (RCFC Form 8).


December 28, 2018                              Respectfully submitted,


                                              By: /s/ Mark H. Wilson

                                              Mark H. Wilson
                                              Tim J. Turner
                                              Whitcomb, Selinsky, McAuliffe, PC
                                              2000 S. Colorado Blvd.,
                                              Tower One, Suite #9500
                                              Denver, CO 80222
                                              Mark@wsmlawpc.com
                                              (303) 534-1958 Telephone
                                              (303) 534-1949 Facsimile
                                              Counsel ESKRIDGE & ASSOCIATES

<u>THE UNITED STATES COURT OF FEDERAL CLAIMS</u>

ESKRIDGE & ASSOCIATES

       Plaintiff

                                                      Action No. _____

UNITED STATES,

       Defendant.

_____

<u>CERTIFICATE OF SERVICE</u>

I certify that on this 28TH day of DECEMBER 2018, the undersigned caused a true and correct copy of the attached COMPLAINT, in the above-captioned matter, to be served upon the Department of Justice, Commercial Litigation Division by electronic mail.